**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHEN LOTT, JR.** | ) | **CASE NO. 1:07CV1607** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | <u>**OPINION AND ORDER**</u> |
| **BRADFORD A. SUDYK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court on Commander Bradford A. Sudyk's ("Defendant") Motion for Summary Judgment. For the following reasons, the Court denies the motion in part and grants in part.

<u>**I. FACTUAL BACKGROUND**</u>

Defendant is assigned to maintain the night traffic in Cleveland Heights, Ohio. He has received several complaints about young people walking in the street disregarding traffic, playing chicken with passing cars and, as a result, regularly issues citations for such infractions. On June 4, 2005, he issued a citation to Stephen Lott ("Plaintiff"). Plaintiff's version of the facts starkly contrast Defendant's version.

Defendant contends that around 7:20 p.m. on June 4, 2005, he was driving to Euclid Heights Boulevard.  As he approached the intersection of Euclid Heights Boulevard and Ivydale Road, he saw twenty to thirty people in the road, some standing, roughhousing and milling around in the street.

Defendant stopped his cruiser and said: "Sir, excuse me.  Could you come over here?"  Defendant repeated this to Plaintiff after he did not respond to his question.   Defendant exited his cruiser, asked Plaintiff to come over and informed him he would be issuing a citation for being in the street.

Defendant states Plaintiff became agitated and combative, yelling there were other people in the street and asking why Defendant was citing him.  Defendant told Plaintiff that he understood other people were in the street but Plaintiff was walking in the street and would be issued a citation.  Defendant contends Plaintiff yelled Defendant was racist and was picking on him because he was black; he also swore this was "bullshit" and Defendant was picking on him for no reason.  (Trial Test. at 22.)  Plaintiff does not dispute he questioned the Defendant: "Officer, I've just crossed the street with 30 people.  Why do I have to get into the car?"  (*Id.* at 379.)  Plaintiff also admits to accusing Defendant of racism, but that he did not do so until later in their interaction.  Defendant states he told Plaintiff: "You committed an infraction.  I would like to issue you a citation.  I'm going to need your cooperation, and I need some information from you.  Could you please come over to my cruiser."  (*Id.* at 22-23.)

Plaintiff remained ten feet away from Defendant and refused to come to the car.  Defendant states Plaintiff began yelling Defendant was a racist and picking on him unnecessarily.  Members of the original crowd then began to form around Defendant and began

to yell at Defendant. Defendant states Plaintiff told the crowd: "This is bullshit. We're not going to let the Cleveland Heights Police do this to us." (*Id.* at 33.)

There was outside interference from both Ernest Meredith and his mother, Karen Meredith. Both of them inquired of Defendant regarding the citation issue. Karen Meredith later stood between Plaintiff and Defendant as Defendant approached the Plaintiff. The situation continued to escalate.

At this point, Defendant states Plaintiff became disorderly; and Defendant repeated ten to fifteen times that he needed Plaintiff to come to his cruiser. Defendant decided to put Plaintiff under arrest for disorderly conduct, and reached out and grabbed Plaintiff's arm to secure his arrest. Defendant maintains that after he grabbed Plaintiff, Karen Meredith started pulling him and that Plaintiff struck the Defendant. Plaintiff insists he never swung at or hit Defendant.

Defendant attempted to call for backup. A struggle ensued; but on the third approach, Defendant was able to get to his radio through his car. While waiting for backup, Defendant obtained his baton from the trunk of his car and swung it two or three times as a warning. Defendant and Officer Barton, who responded to Defendant's call for backup, had to restrain Plaintiff because he struggled against being handcuffed.

After Plaintiff was in the back seat of Officer Barton's car, Defendant was struck twice by Ernest Meredith. At this point, two to three people began to jump on top of Defendant while hitting, kicking and tugging at his gun. Karen Meredith and Ernest Meredith were arrested. Defendant went to the hospital for cuts, abrasions and contusions, and bruises were visible four days after the incident.

Plaintiff claims around 7:00 p.m. on June 4, 2005, Plaintiff and other youths attending a

graduation party crossed Euclid Heights Boulevard. Plaintiff claims after crossing the street, Defendant rolled down his window and asked him if he wanted a ticket for being in the street. Plaintiff claims after being called by the officer, he walked back to the officer. Defendant told Plaintiff he was going to give Plaintiff a citation for being in the street. Plaintiff asked why he was being singled out and Defendant responded that he was the only one the officer saw in the street.

Commotion ensued as Ernest Meredith walked back toward where Defendant parked his cruiser. Plaintiff claims Defendant then began swearing and telling some of the people gathered around to get back. Plaintiff states Defendant grabbed Plaintiff, but Ernest Meredith pulled Plaintiff away. Karen Meredith then came over and asked the officer what the problem was.

Defendant asked if anyone in the group was eighteen and Plaintiff responded he was. Defendant tried to grab Plaintiff and the crowd began to get more out of control and surrounded the police cruiser. Defendant called for backup claiming he had been hit; however, Plaintiff states this was not true. Defendant then took a wooden club from his trunk, swung the club and hit one of the ladies in the group, Christa Davis. (Lott Aff. ¶ 7; Trial Test. at 318.)

After backup arrived, Defendant identified Plaintiff to the other officer and informed him he was being arrested. The other officer forced Plaintiff into the police cruiser but Plaintiff claims he did not resist the arrest. Plaintiff observed the other officers tackle Ernest Meredith and Plaintiff was then driven to the Cleveland Heights Police station, where his cell phone and driver's license were destroyed. Plaintiff alleges he was never given his Miranda rights and was kept in jail for three days. Plaintiff was charged with four felonies in Cuyahoga County Common Pleas Court and was found not guilty on all four charges.

Defendant filed a Motion for Summary Judgment on January 28, 2008 and Plaintiff filed a response on February 26, 2008. Included in his response, Plaintiff attached an affidavit dated February 25, 2008 which Defendant asserts contradicts his earlier trial testimony.

## II. LAW AND ANALYSIS

### A.     SUMMARY JUDGMENT STANDARD

Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Procedure, is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party has the burden to show that no genuine issue of material fact exists:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portion of "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. "A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). In deciding this motion, "the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving

party." *Id.* Summary Judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc*., 48 F.3d 937, 941 (6th Cir. 1995).

### 1. PLAINTIFF STEPHEN LOTT'S AFFIDAVIT

Plaintiff provided an affidavit attached to his opposition to Defendant's Motion for Summary Judgment. In his response to the opposition, Defendant asserts that much of this information contradicts Plaintiff's previous trial testimony.

The Sixth Circuit has held that a party may not submit an affidavit after summary judgment has been filed that contradicts his earlier testimony. *Penny v. U.S. Postal Service*, 128 F.3d 408, 415 (6th Cir. 1997); *see also Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (upholding district court's refusal to consider supplemental contradictory affidavit in motion for summary judgment). Because there is a genuine dispute regarding material facts in trial testimony and affidavits submitted, the Court need not consider whether Plaintiff's affidavit contradicts his previous testimony. This dispute of material fact is left for the jury to consider.

### 2. PLAINTIFF STEPHEN LOTT'S SUPPLEMENTAL MEMORANDUM OF JUDGE GAUGHAN'S OPINION AND ORDER

Plaintiff provided the Court with a supplemental Opinion and Order in an unrelated case from Judge Gaughan. This Opinion and Order, Plaintiff asserts, demonstrates why the Court should adopt Plaintiff's version of the facts**.** Defendant moved to strike this supplemental Opinion and Order because the materials were filed without leave of court, violating Local Rule 7.1(a).

As Defendant correctly notes, the Court does not have to accept Plaintiff's version of facts as true. Rather, the "record taken as a whole" determines if there is a dispute regarding a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court examined the record in a light most favorable to the non-moving party, here the Plaintiff, and, in viewing the facts most favorable to the Plaintiff, finds disputed material facts involving the interaction between Plaintiff and Defendant on June 4, 2005.

**B.     PLAINTIFF'S 42 U.S.C. § 1983 CLAIM OF CIVIL RIGHTS VIOLATION**

In his Complaint, Plaintiff asserts his civil rights were violated under 42 U.S.C. § 1983 ("§ 1983") when Defendant arrested him on June 4, 2005. To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must show "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law." *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). State officials sued in their individual capacities are "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). State officers are not absolutely immune from personal liability under § 1983 by virtue of the "official" nature of their acts. *Id.*

Plaintiff asserts he engaged in no unlawful conduct and claims Defendant had no probable cause to arrest him. (Compl. ¶ 5.) Further, he claims when Defendant arrested him, Defendant used physical force to place him inside the police cruiser. (*Id.*) After arresting Plaintiff, Defendant signed a criminal complaint against Plaintiff, claiming Plaintiff caused harm to a police officer. (Compl. ¶ 6.) By arresting and filing a criminal complaint against Plaintiff, Plaintiff asserts Defendant violated rights secured to Plaintiff by the United States Constitution but does not specifically state which section(s) of the United States Constitution were violated.

(Compl. ¶ 7.)

**C.     DEFENDANT'S QUALIFIED IMMUNITY DEFENSE**

Qualified immunity shields government officials from civil liability when performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Their conduct must not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Id.* "Qualified immunity is an affirmative defense and must be pleaded by a government official." *Id.* at 815.

When reviewing a qualified immunity defense, the Supreme Court has set forth a two-prong test. First, the Court determines whether facts viewed in the light most favorable to plaintiff show a constitutional right has been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, if the court finds a violation, it must determine if the violation involved clearly established constitutional or federal authority of which a reasonable person would have known. *Id.* at 201-02. Only if the answer to both questions is yes may an official's defense of qualified immunity be denied. *Id.* at 202.

Qualified immunity, as the Defendant properly states, involves "immunity from suit rather than a mere defense to liability." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). The first question addressed by the Court in assessing Defendant's qualified immunity claim  is whether Plaintiff has stated a claim showing a constitutional violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

1. **PROBABLE CAUSE AND ARREST**

For a plaintiff to prevail on a wrongful arrest claim under § 1983, the plaintiff must prove the police lacked probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). A police officer determines probable cause exists after examining the facts and circumstances within his knowledge, finding "that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raiser*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Here, there is more than one reasonable determination possible. Plaintiff's and Defendant's versions of the events leading up to and surrounding the arrest are diametrically opposed. A reasonable trier of fact could find that Plaintiff did not commit an infraction, was merely crossing the street and in no way was involved in an aggravated riot or obstructing justice. However, a reasonable jury could also find Defendant acted reasonably in his stop and later arrest of Plaintiff on all charges including aggravated riot, obstructing official business, assault and disorderly conduct. If the jury finds the Defendant acted reasonably under color of state law, he may, again, raise his defense of qualified immunity, relying on the determination there was no constitutional violation i.e., lack of probable cause.

### 2. **CRIMINAL COMPLAINT**

Defendant issued a criminal complaint against Plaintiff. Plaintiff's Complaint, when liberally read, states a claim of malicious prosecution against Defendant, for allegedly signing the Complaint without probable cause. The Sixth Circuit has held a claim for malicious prosecution cannot be brought against a police officer who did not participate in the decision to prosecute. *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (holding police officer could not be found liable when he did not make the decision to prosecute).

In *Skousen*, the Court found the officer did not participate in the decision to prosecute. *Skousen*, 305 F.3d at 529. His only role was to turn over his police report for the investigation. *Id.* After he turned over his evidence, he did not participate or become involved in the decision to prosecute. *Id.* Similar to *Skousen*, the Court finds that Defendant is entitled to judgment as a matter of law on this particular claim because Defendant did not participate in the Grand Jury indictment of Plaintiff in Cuyahoga County Common Pleas Court. (Sudyk Aff. ¶ 19.) The complaint signed by Defendant was dismissed at the request of the Cleveland Heights Municipal Judge. (*Id.*) Plaintiff was tried on a separate Grand Jury indictment where the Grand Jury found probable cause for assault, aggravated riot and resisting arrest. (*See* Certified True Bill of Grand Indictment dated June 4, 2005.) Plaintiff does not address this claim in his Opposition Motion to Summary Judgment; in essence, conceding Defendant's arguments. Thus, Defendant is entitled to summary judgment regarding Plaintiff's malicious prosecution claim.

## III. CONCLUSION

For the foregoing reasons, the Court denies Summary Judgment in part and grants in part. Because of the material fact dispute, a jury must make the factual findings necessary to determine if Defendant had probable cause to arrest Plaintiff. As a result, the Court denies judgment to Defendant on the basis of qualified immunity. However, because the evidence demonstrates, and Plaintiff concedes, Defendant did not participate in the Grand Jury indictment, he is entitled to judgment as a matter of law on the malicious prosecution claim.

**IT IS SO ORDERED.**

**DATE: July 2, 2008**

                                          **s/Christopher A. Boyko**
                                          **CHRISTOPHER A. BOYKO**
                                          **United States District Judge**